IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**HENRY BOYD, JR.; DOROTHY**     **PLAINTIFFS**
**BISHOP; and KAREEM EL-AMEEN,**
individually and on behalf of all others
similarly situated

VS.      CIVIL ACTION NO. 3:06cv548HTW-LRA

**HALEY BARBOUR, GOVERNOR OF THE STATE
OF MISSISSIPPI; JIM HOOD, ATTORNEY
GENERAL OF THE STATE OF MISSISSIPPI;
and ERIC CLARK, SECRETARY OF STATE OF
MISSISSIPPI,** members of the Mississippi State Board of
Election Commissioners; **LUCY CARPENTER,** Circuit
Clerk and Registrar for Marshall County, Mississippi;
**ANGIE MCGINNIS,** Circuit Clerk and Registrar for
Oktibbeha County, Mississippi; **ROGER GRAVES,**
Circuit Clerk and Registrar for Pike County, Mississippi,
on behalf of himself and all others similarly situated; and
**AUDREY JENKINS, ARTIST ROBBINS, SHIRLEY
FITZGERALD, MELODY WHITE, and LYNN WELLS,**
members of the PIKE COUNTY, MISSISSIPPI BOARD
OF ELECTION COMMISSIONERS, on behalf of
themselves and all others similarly situated     **DEFENDANTS**

RESPONSE TO DEFENDANTS'
MOTION TO DISMISS COMPLAINT

INTRODUCTION

Plaintiffs, Henry Boyd, Jr., Dorothy Bishop, and Kareem El-Ameen, individually and on

behalf of all others similarly situated, pursuant to *42 U. S. C. § 1973c* and *Fed. R. Civ. P. 8, 9*, *& 65,*

1

and respond to the motion to dismiss complaint filed by the State defendants.[1]  In response to the defendants' motion, plaintiffs will set forth the background, argument, and their conclusion.

## BACKGROUND

In 1985, Henry Kirksey and 24 other African-American voters in Mississippi brought a class action voting rights case challenging the at-large numbered post method used to elect Mississippi's trial judges.  The *Kirksey* plaintiffs sought to enjoin the use of unprecleared voting practices and procedures in state judicial elections under § 5 of the Voting Rights Act of 1965, *42 U. S. C. § 1973c*.  And, they sought to enjoin use of racially discriminatory election districts under § 2 of the Voting Rights Act of 1965, *42 U. S. C. § 1973*.  A three-judge district court was convened to hear and decide the § 5 issues raised in the *Kirksey* case.  That Court determined that the State of Mississippi had implemented unprecleared voting changes in 19 multi-member chancery and circuit court districts. *Kirksey v. Allain*, 635 F. Supp. 347 (S. D. Miss. 1986) (three-judge court).  The three-judge court subsequently entered a permanent injunction enjoining use of the numbered post feature for elections in those 19 districts.  The three-judge district court then remanded the case to the single district judge for a determination of issues under § 2 of the Voting Rights Act of 1965, *42 U. S. C. § 1973*.  The single district judge, Honorable William H. Barbour, Jr., found that seven (7) multi-member chancery and circuit court districts violated § 2 of the Voting Rights Act of 1965, *42 U. S. C. § 1973*. *Martin v. Allain*, 658 F. Supp. 1183 (S. D. Miss. 1987).[2]  Those seven (7) districts were

---

[1] The motion to dismiss was filed by Haley Barbour, Governor of the State of Mississippi; Jim Hood, Attorney General of the State of Mississippi, and Eric Clark, Secretary of State for Mississippi, members of the State Board of Election Commissioners.

[2] The *Kirksey* case was consolidated with the *Martin* case.  The *Kirksey* case involved challenges to circuit, chancery, and county court districts throughout the State of Mississippi. The *Martin* case involved a challenge to only one circuit, one chancery, and one county court

the 5th, 7th, 9th, and 11th chancery court districts, and the 4th, 7th, and 11th circuit court districts. *Martin v. Allain*, supra. Judge Barbour specifically found "that th epolicy of post system elections in multi-judge chancery, circuit and county court judicial districts is tenuous." *Martin v. Allain*, 658 F. Supp. at 1195-1196. Judge Barbour then fashioned single-member sub-election districts as a remedy for the § 2 violations. *Martin v. Mabus*, 700 F. Supp. 327 (S. D. Miss. 1988).

The three-judge *Kirksey* court entered a permanent injunction in December, 1988 requiring elections from 1989 forward in those 19 districts where a § 5 violation was found to allow single-shot voting but not use the numbered place feature.[3] Judicial elections were held in 1989 and 1990 under the permanent injunctions in the *Kirksey* and *Martin* cases.

In 1994, the State of Mississippi codified the injunctions in the *Kirksey* and *Martin* cases into state law. The state law was administratively precleared by the United States Attorney General. Judicial elections were held in 1994, 1998, and 2002 under the precleared state law. The results of judicial elections in the 15 chancery and circuit court districts where the numbered post feature was prohibited were determined by state law, particularly §§ 23-15-982,[4] 983,[5] and 984,[6] *Miss. Code*

---

district. Since the *Martin* case was filed before the *Kirksey* case, the cases were referred to as the *Martin* case after consolidation.

[3]The permanent injunction is attached as an exhibit to plaintiffs' complaint.

[4]Mississippi Code Annotated, *§ 23-15-982* states:

> (1) Majority of vote equals any excess of the total vote for all candidates divided by the number of judgeships to be filled divided by two (2).
>
> If some or all candidates in a multijudge election do not receive a majority of the vote, then candidates equal in number to twice the number of remaining positions to be filled and having the highest votes shall run in a runoff election. In such event, if there is not a sufficient number of remaining candidates equal to twice the number of remaining positions to be filled,

*Ann. (Supp. 1994).*

---

> then all remaining candidates shall run in the runoff election.
>
> (2) Any tie votes which require resolution to determine who shall enter a runoff election shall be determined by the commissioners of election in the manner prescribed by Sections 23-15-601 and 23-15-605.
>
> Candidates equal to the remaining number of positions to be filled who have the highest votes in the runoff election are elected.
>
> Any tie votes which must be determined in order to decide who is elected as a result of a runoff election shall be determined by the State Election Commission in the manner prescribed by Sections 23-15-601 and 23-15-605.
>
> (3) The provisions of this section shall apply only to districts and subdistricts which are multijudge districts except for the Eight, Tenth, Sixteenth and Twentieth Chancery Court Districts and the Second, Eighth and Nineteenth Circuit Court Districts.

[5]Mississippi Code Annotated, *§ 23-15-983* states:

> At the general election, the candidates equal to the number of positions to be filled and having the highest votes shall be elected.
>
> Any tie in votes in the general election which must be resolved in order to determine who is elected shall be resolved in the manner prescribed by Sections 23-15-601 and 23-15-605.
>
> The provisions of this section shall apply only to districts and subdistricts which are multijudge districts except for the Eight, Tenth, Sixteenth and Twentieth Chancery Court Districts and the Second, Eighth and Nineteenth Circuit Court Districts.

[6]Mississippi Code Annotated, *§ 23-15-984* states:

> The qualified electors may vote for one or more candidates, but not to exceed the number of positions to be filled in the particular judicial election. In the event that a qualified elector votes for a number of candidates exceeding the number of positions to be filled, then his or her ballot shall not be counted.

The Mississippi Legislature enacted a statute, S. B. 2339, which was codified as Chapter 501, Laws of Mississippi 2005, in 2005 which was precleared by the U. S. Attorney General on September 15, 2005, but which was not to take effect until January 1, 2007.

The Mississippi State Board of Election Commissioners consisting of Haley Barbour, Governor of Mississippi, Jim Hood, Attorney General of Mississippi, and Eric Clark, Secretary of State of Mississippi, have implemented S. B. 2339 for elections for chancery and circuit court judges scheduled for November 7, 2006. The State Board of Election Commissioners approved a sample ballot on August 15, 2006 utilizing the numbered place feature and at-large method of election. Attorney General Jim Hood issued an official opinion on January 28, 2006 stating that the elections for chancery and circuit court judges in November, 2006 shall be conducted in accordance with the statute that does not take effect until January 1, 2007.[7]

## ARGUMENT

The state defendants argue that plaintiffs' complaint should be dismissed, pursuant to *Fed. R. Civ. P. 12(b)(6)*, because the complaint fails to state a claim upon which relief can be granted. Specifically, the defendants argue that plaintiffs fail to present facts on their 14th amendment claim, § 2[8] claim, and § 5[9] claim. The defendants are wrong in their argument.

---

[7]The numbered place system does not take effect until January 1, 2007. More importantly, the State statutes which codified the *Kirksey* Court's final judgment concerning the method of election and the method of casting and counting votes and determining a majority vote for the 19 chancery and circuit court districts mentioned above are not repealed until January 1, 2007. See, Section 22 of S. B. 2339.

[8]*42 U. S. C. § 1973*.

[9]*42 U. S. C. § 1973c.*

I. **Plaintiffs Pleadings Satisfy the Notice Pleading Requirement**.

A. Plaintiffs' 14th Amendment Claim

The defendants argue that plaintiffs do not allege sufficiently detailed facts to state a 14th amendment claim. In other words, the defendants argue that a heightened pleading standard is applicable. They are wrong. In any action alleging a violation of a constitutional right where a plaintiff is seeking § 1983 relief, only notice pleading is required. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U. S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). In *Leatherman*, the Supreme Court expressly stated:

> We think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case with the liberal system of 'notice pleading' set up by the Federal Rules. Rule 8(a)(2) requires that a complaint include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.

*Leatherman*, 507 U. S. at 168, 113 S. Ct. at 1163.

The Court went on to state that only in cases of fraud and other claims provided in *Fed. R. Civ. P. 9(b)*, is pleading required with particularity. *Leatherman*, 507 U. S. at 168, 113 S. Ct. at 1163. In 2002, the Supreme Court affirmed the notice pleading requirement in a case dealing with racial discrimination again holding that heightened pleading is not required in such a case. See, *Swierkiewicz v. Sorema N. A.*, 534 U. S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). There the Court held that "imposing the Court of Appeals' heightened pleading standard in employment discrimination cases conflicts with the Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N. A.*, , 534 U. S. at 512, 122 S. Ct. at 998. Plaintiffs are

6

not required "to allege all the fact necessary to prove [their] claim." *Sparrow v. United AirLines, Inc.*, 216 F. 3d 1111, 1115 (D. C. Cir. 2000). Even in complex cases such as antitrust cases, heightened pleadings is not required. *Twombly v. Bell Atlantic Corporation*, 425 F. 3d 99 (2nd Cir. 2005).

In the present case, plaintiffs alleged that they are African-American citizens and voters of the various circuit and chancery court districts they are challenging. Compl., ¶ 2. The state defendants are members of the State Board of Election Commissioners and charged with the responsibility of conducting the election for judges. Compl., ¶¶ 5-7. "Mississippi has a long history of official discrimination against African American voters. Compl., ¶ 12. Voting is racially polarized and statistically significant in the State, with black voters being politically cohesive. Compl., ¶¶ 13-14. Blacks still suffer from the effects of invidious racial discrimination. Compl., ¶ 16. And, a greater percentage of blacks live below the poverty level than whites. Compl., ¶ 17. Unusually large election districts, anti-single shot voting and the numbered post feature enhance the opportunity for discrimination. Compl., ¶ 15. And, the policy of maintaining multi-judge circuit and chancery court districts is tenuous. Compl., ¶ 19. The complaint detailed the history of the *Kirksey v. Allain* litigation and ensuing state legislation. Compl., ¶¶ 21-31. More importantly, the complaint clearly states that the State Board of Election Commissioners intentionally implemented unprecleared voting changes that adversely impact black voting strength. Compl., ¶¶ 29-35.

Without a doubt, plaintiffs have satisfied the "notice pleadings" requirement of *Leatherman*. See, *Swierkiewicz v. Sorema N. A.*, supra.

B.  Plaintiffs' § 2 Claim

Plaintiff alleged sufficient facts to prove a § 2 voting rights claim. [See Part A above].

Without a doubt, plaintiffs have satisfied the "notice pleadings" requirement of *Leatherman.* See, *Swierkiewicz v. Sorema N. A.*, supra.

### C.  Plaintiffs' § 5 Claim

Plaintiffs alleged that the defendants were implementing unprecleared voting changes and those same changes had been enjoined by a previous three-judge district court.  Compl., ¶ ¶ 1-39. See, *Kirksey v. Allain*, 635 F. Supp. 347 (S. D. Miss. 1986).

Without a doubt, plaintiffs have satisfied the "notice pleadings" requirement of *Leatherman.* See, *Swierkiewicz v. Sorema N. A.*, supra.

**II.    The Doctrine of Laches Does Not Apply to a § 5 Case**.

Plaintiffs, at this stage of the litigation, are only seeking § 5 relief.  It has firmly been held by a three-judge district court in this State that the doctrine of laches does not apply to a § 5 private enforcement action.  In *Dotson v. City of Indianola*, the three-judge court expressly held:

> Nevertheless, we conclude that the doctrine of laches si not available in a private action for injunctive relief brought under Section 5 of the Voting Rights Act.  We do so for several reasons.
>
> First, application of the laches defense to bar the plaintiffs' action would frustrate the remedial purposes of the Act.  Section 5 was intended to prevent covered states from fashioning voting changes which might deprive blacks of their right to vote. . .
>
> Second, the doctrine of laches is inconsistent with the nature of the obligation imposed by Section 5 upon affected states and political subdivisions...
>
> Third, the remedy sought does not go the legality of the [voting changes].

*Dotson v. City of Indianola*, 514 F. Supp. 397, 400-401 (N. D. Miss. 1981) (three-judge court). Other courts, as well, have held that the doctrine of laches does not apply to a  § 5 private enforcement action.  See, *Henderson v. Graddick*, 641 F. Supp. 1192 (M. D. Ala. 1986) (three-judge

court). After all, it is the State's obligation to seek preclearance. *Bone Shirt v. Hazeltine*, 200 F. Supp. 2d 1150 (D. S. D. 2002) (three-judge court), relying on *Lopez v. Monterey County, Cal.*, 519 U. S. 9, 117 S. Ct. 340, 136 L. Ed. 2d 273 (1997).

The cases that the defendants rely on are distinguishable. Those cases involve constitutional challenges or challenges based on § 2 of the Voting Rights Act. Section 2 does not contain the injunctive relief that is accorded plaintiffs for a § 5 violation. In *Lopez*, the Supreme Court stated that the pivotal question is when did the submitting jurisdiction become aware of the preclearance requirement. In this case, it was no later than January, 2006. The burden remained on the State Attorney General to seek preclearance. He can not now avail himself of the laches defense when he failed to obtain timely § 5 review.

## **CONCLUSION**

On the basis of the foregoing facts and authorities, this Court should grant plaintiffs the following relief:

a. Issue a temporary restraining order prohibiting the defendants from implementing unprecleared voting changes until a three-judge court can be convened.

c. Enter a declaratory judgment that S. B. 2339 codified as Chapter 501, Laws of Mississippi 2005 is a change in voting that has not been precleared for use in judicial elections in November, 2006, pursuant to Section 5 of the Voting Rights Act of 1965, *42 U. S. C. § 1973c*, and violates Section 5 of the Voting Rights Act of 1965, *42 U. S. C. § 1973c*, and the 14th Amendment to the United States Constitution.

d. Enter a temporary restraining order requiring that the election for chancery and circuit court judge in the following chancery and circuit court districts be conducted pursuant to *§ § 23-15-*

*982, 983 & 984, Miss. Code Ann. (Supp. 2005)*:

1. 1st Chancery Court District

2. 3rd Chancery Court District

3. 6th Chancery Court District

4. 12th Chancery Court District

5. 13th Chancery Court District

6. 18th Chancery Court District

7. 1st Circuit Court District

8. 3rd Circuit Court District

9. 5th Circuit Court District

10. 10th Circuit Court District

11. 14th Circuit Court District

l2. 15th Circuit Court District

13. 16th Circuit Court District

14. 17th Circuit Court District

15. 20th Circuit Court District.

This the 30th day of October, 2006.

    Respectfully submitted,
    HENRY KIRKSEY, ET. AL.,
    PLAINTIFFS

    /s/ Carroll Rhodes
    CARROLL RHODES, ESQ., MSB # 5314
    LAW OFFICES OF CARROLL RHODES
    POST OFFICE BOX 588

HAZLEHURST, MS 39083  
(601) 894-4323  
crhode@bellsouth.net

DEBORAH A. MCDONALD, ESQ.  
521 MAIN STREET  
POST OFFICE BOX 2038  
NATCHEZ, MS 39121-2038  
(601) 445-5577  
attorneydmc@bellsouth.net

LEONARD MCCLELLAN, ESQ.  
LEE & ASSOCIATES  
2311 WEST CAPITOL STREET  
JACKSON, MS 39209  
(601) 355-9895  
lass2311@aol.com

CARMEN BROOKS, ESQ.  
707 MAIN STREET  
POST OFFICE BOX 448  
NATCHEZ, MS 39121  
(601) 445-5577  
cbrooks1@jam.it.com

## **CERTIFICATE OF SERVICE**

  I, CARROLL RHODES, one of the attorneys for the plaintiffs, hereby certify that I have this day electronically served by the ECF system, a true and correct copy of the above and foregoing on:

Shawn Shurden, Esq.
sshur@ago.state.ms.us

This the 30th day of October, 2006.

                  /s/ Carroll Rhodes
                  Carroll Rhodes